Richard Aguila Taguinod, Esq. SBN 203288
Eloisa Songco Quiambao, Esq. SBN 343608
5170 Golden Foothill Parkway, El Dorado Hills, California 95762
Telephone: (916) 618-4388
Fax:          (916) 619-4389
Email:        rtaguinod@aol.com
Attorneys for the Plaintiffs Russell Gene Thompson and Victoria Thompson

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF RUSSELL GENE THOMPSON, VICTORIA THOMPSON<br><br>                   Plaintiffs,<br><br>vs.<br><br>VETERANS AFFAIRS-SAN FRANCISCO MEDICAL CENTER, JIA F. LI AS ACTING DIRECTOR VA-SAN FRANCISCO HEALTHCARE, GEOFFREY STETSON, LYNN FLINT, MARCO GOMEZ, JUDITH WOLF, DOES 1-100<br><br>                Defendants | Case No.: Number<br><br>**COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH** |

Plaintiff, the late RUSSELL GENE THOMPSON ("RGT"), by and as his surviving

spouse and personal representative, VICTORIA THOMPSON ("VT"), and VICTORIA

THOMPSON herself, (collectively "Plaintiffs"), hereby allege and complain against the

Defendant VETERANS AFFAIRS-SAN FRANCISCO MEDICAL CENTER ("VA-SF"),

Defendant JIA LI, Defendant HAROLD ORTIZ, Defendant GEOFFREY STETSON, Defendant

MARCO GOMEZ, and DOES 1 through 100, inclusive, (collectively "Defendants").

Doc ID: 191245c3ebcbaf80fd9156a61dca1c964b65a59c

## I. **INTRODUCTION**

1.      This action is brought by Plaintiffs for Defendants' lack of informed consent, negligence associated with the tort of lack of informed consent, murder, negligence associated with homicide, fraud or deceit, negligence associated with fraud or deceit, detention of corpse or human remains, negligence associated with detention of corpse or human remains, negligence of VA-SF staff which resulted to 19 open areas, negligence of VA-SF staff which resulted to more pain on plaintiff because of the open areas, negligence of VA-SF itself as a healthcare hospital facility, vicarious liability of VA-SF, elder abuse in violation of CA Elder Abuse Law by VA-SF staff,  elder abuse in violation of CA Elder Abuse Law by VA-SF, survival action, and wrongful death.

2.      This action seeks all available remedies at law for all the harms done to the Plaintiffs.


## II. **VENUE**

3.      Venue as to each Defendant is proper in this federal district court, pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§1346(b) and 2671-2680.  The Plaintiffs are alleging civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

4.      Procedural requirement of filing an administrative tort claim first with the U.S. Department of Veterans Affairs was met and Plaintiffs expressly authorized to file suit in federal district court.

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

5.      Each Defendant in this civil action is an employee of the VA-SF, and each cause of action was committed by each Defendant while acting within the scope of his or her employment, while employed by VA-SF.

6.      Each Nominal Defendant in this civil action is a biological child of the late RGT but would rather not participate in this litigation as Plaintiffs.   Because of this matter, the three (3) biological children of the late RGT are named Nominal Defendants, pursuant to California Code of Civil Procedure §377.60 which allows for this wrongful death claim to be asserted, and *Watkins v. Nutting*, 17 Cal. 2d 490, 498 which allows the biological children who refuse to participate as Plaintiffs be named as Nominal Defendants.

### III.      **PARTIES**

7.      Plaintiff deceased RGT, by and through his surviving spouse and personal representative VT, was, and at all times relevant hereto, a natural person residing in the County of Sacramento;

8.      Plaintiff VT, spouse of deceased veteran RGT, is a natural person residing in the County of Sacramento;

9.       At all relevant times, named Defendants have transacted and continue to transact business at VA-SF;

10.      Defendant VETERANS AFFAIRS-SAN FRANCISCO MEDICAL CENTER ("VA-SF"), is an entity servicing health care for veterans, located at 4150 Clement Street, San Francisco, CA 94121;

11.      Defendant JIA LI, Acting Director of VA-SF, is a natural person;

12.      Defendant HAROLD ORTIZ, Chief of Nursing of VA-SF, is a natural person;

13.      Defendant GEOFFREY STETSON, was the ATTENDING PHYSICIAN, for the late RGT;

14.      Defendant LYNN FLINT, was the STAFF PHYSICIAN, GERIATRICS, for the late RGT;

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

15.     Defendant MARCO GOMEZ, was the NURSE, for the late RGT;

16.     Defendant JUDITH WOLF, was the STAFF IN OFFICE OF THE DECEDENT;

17.     Nominal Defendant KATHERINE THOMPSON, residing at 471 Almond Drive Number 86, Lodi CA 95240;

18.     Nominal Defendant DIRK THOMPSON, residing at 4184 Gemstone Drive, Acampo CA 95220;

19.     Nominal Defendant MICHELLE THOMPSON-COWGILL, residing at 10817 Ivoryton Way, Mather CA 95655;

20.     and

21.     Defendant DOES 1 THROUGH 100.

22.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sue Defendants by such fictitious names under Code of Civil Procedure §474. Plaintiffs are informed and believed, and based thereon allege, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known.

23.     At all relevant times, each defendant committed the acts, caused, or directed others to commit the acts, or permitted others to commit the acts, alleged in this Complaint.  Additionally, some or all of the defendants acted as the agent of the other defendants, and all of the defendants acted within the scope of their agency if acting as agent of another.

## IV. <u>STATEMENT OF FACTS</u>

24.     That Plaintiff Virginia Thompson ("VT") is the surviving spouse of the late Russell Gene Thompson and resides in the State of California.

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

25.     That the late Russell Gene Thompson ("RGT") died on October 6, 2021, at Veterans Affairs-San Francisco Medical Center ("VA-SF"), in San Francisco County, California.

26.     That at all times herein VA-SF was and still is a viable part of the U.S. Department of Veterans Affairs, providing primary care and health services to U.S. veterans, and is located at 4150 Clement Street, San Francisco, CA 94121.

27.     That this action is brought partly as a survival action filed by the estate of the deceased RGT with the surviving spouse Plaintiff VT as the representative, for all harms suffered by the deceased before dying.

28.     That this action is brought partly as a wrongful death action by Plaintiff VT as the surviving spouse.

29.     That this action is brought partly for fraud, negligence, violation of CA Health & Safety Code §7053 by Plaintiff VT.

30.     That this action is brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§1346(b) and 2671-2680.

31.     That procedural requirements under the aforementioned statute were met.

32.     That the late RGT was hospitalized in Defendant VA-SF from August 19, 2021 to October 6, 2021.  The late RGT's primary diagnosis was altered mental status secondary to medication side effects.  This was a month and a half stay in Defendant VA-SF, under Defendant JIA LI's, Acting Director of VA-SF, tutelage.

33.     That at all times relevant, the Defendant VA-SF employed various medical providers, nurses, and medical staff, at its hospital, to include but not limited to Defendant JIA LI, Acting Director of VA-SF; Defendant HAROLD ORTIZ, Chief of Nursing of VA-SF; Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN, for the late RGT; Defendant LYNN FLINT, STAFF PHYSICIAN, GERIATRICS, for the late RGT; and Defendant MARCO GOMEZ, NURSE, for the late RGT.  That these employees/servants/agents were acting within

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 5

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

the scope of their employment with the Defendant VA-SF when they rendered medical care to the late the late RGT.  The aforementioned Defendants had a duty to the late RGT to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; that aforementioned Defendants breached that duty which caused harm to the late RGT and Plaintiff VT.

34.     That the late RGT developed multiple open skin breakdowns and/or open areas all over his body, with an additional twelve (12) on different body parts.  See Exhibit A (Body parts affected).  The late RGT was admitted with an initial nine (9) total open areas but under the care of most of the Defendants, there were an additional twelve (12) more.  Those tasked with the late RGT's care include:  Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN, Defendant LYNN FLINT, STAFF PHYSICIAN, GERIATRICS, Defendant HAROLD ORTIZ, Nursing, Defendant MARCO GOMEZ, NURSE.

35.     That the aforementioned Defendants had a duty to the late RGT to ensure that he did not develop more open areas anywhere in his body.  These Defendants breached their duty to their patient because under their care, their patient, the late RGT, developed more open areas, with a total of an additional twelve (12) open areas and skin breakdown all over his body.

36.     That the late RGT suffered increased pain from all of these skin breakdowns and/or open areas.  See Exhibit B (Photos of affected areas).  Those tasked with the late RGT's care include: Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN, Defendant LYNN FLINT, STAFF PHYSICIAN, GERIATRICS, Defendant HAROLD ORTIZ, Nursing, Defendant MARCO GOMEZ, NURSE.  Firstly, it was documented on his medical chart that the late RGT experienced severe pain because of the skin breakdowns and/or open areas.  See Exhibit C (Document of severe pain).  Secondly, it is reasonable to assume there will actually be increased pain when there were more open areas.

37.     That the aforementioned Defendants had a duty to the late RGT to ensure that he does not have more sources of additional excruciating pain anywhere in his body.  These Defendants

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 6

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

breached their duty to their patient because under their care, their patient, the late RGT, developed more sources of pain because he developed more skin breakdowns.

38.     That the late RGT was a Full Code as of July 8, 2021.  See Exhibit D (Letter to health team by Russell Gene Thompson).  Also See Exhibit E (Discharge Summary with Full Code).

39.     That Defendant STETSON and/or STETSON'S AGENT turned off RGT's heart defibrillator on October 5, 2021.  Defendant STETSON admitted in his documentation that he wanted the defibrillator off, that the other unidentified Defendant, named DOES 1 through 100, also wanted the defibrillator off, and Defendant STETSON told the wife that it was his duty to turn it off because the late RGT was a Do Not Resuscitate/Do Not Intubate, and that Defendant STETSON and his medical team thought it was their ethical duty to turn off the defibrillator. See Exhibit F (Stetson note with his decision to turn off defibrillator).  See Exhibit G (Another documentation of unilaterally ending the late RGT's life).  As far as the late RGT and Plaintiff VT were concerned, the late RGT was a Full Code, and they did not want to have the defibrillator turned off while he was still alive.

40.     That Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN and Defendant LYNN FLINT, STAFF PHYSICIAN, GERIATRICS failed to disclose to RGT and/or VT the material risk of death;  the material risk actually happened, and was the proximate cause of the injury to RGT; and any ordinary reasonable person in the position of RGT and/or VT would have decided against turning off the heart defibrillator AICD, at that time, if known of the risk of death thereafter which could be sooner than both anticipated.

41.     That Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN and Defendant LYNN FLINT, STAFF PHYSICIAN, GERIATRICS, and the rest of the healthcare team had a duty to practice informed consent regarding turning off RGT's defibrillator.

42.     That the aforementioned Defendant/s breached that duty because informed consent about turning off the defibrillator was not done.

43.     That the late RGT died at 6:06 am on October 6, 2021.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 7

44.     That Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN, Defendant LYNN FLINT, STAFF PHYSICIAN, GERIATRICS, and the rest of the healthcare team, are all liable for murder because the death of the late RGT was a result of killing with malice aforethought,

45.     That in the late RGT's case, it is evident that there was malice aforethought because this was a killing done deliberately and intentionally because there was an intent on the aforementioned Defendants to end the late RGT's life.  See Exhibit F (Stetson note with his decision to turn off defibrillator).  Also See Exhibit G.

46.     That Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN, Defendant LYNN FLINT, STAFF PHYSICIAN, GERIATRICS, and the rest of the healthcare team, all had a duty to not turn off the defibrillator without giving the late RGT and Plaintiff VT full disclosure and getting a valid consent.   The aforementioned Defendants breached that duty because the late RGT's defibrillator was turned off the defibrillator without the full disclosure and valid consent.

47.     That Plaintiff VT and her son Kenneth James, an Air Force employee, visited the VA Office of Decedent the next day(s) after the late RGT's death, and both of them talked to Defendant JUDITH WOLF.

48.     That Plaintiff VT was told that she needed to sign a waiver to get an autopsy and to get the decedent RGT's body.  WOLF told VT That if VT did not sign the waiver, then outside services would charge VT around $37,000.  VT did not have $37,000 so she signed a waiver. Exhibit H (Authorization for Autopsy and Responsibility for Burial, here forth called "Waiver").

49.     That Plaintiff VT was trying to get the decedent RGT's body after a few days, but Defendant Wolf was refusing to release the corpse.  Plaintiff VT did not fully understand that signing the Waiver meant that she was entirely giving up the corpse of her husband.  She thought that she just did not have to pay the $37,000.

50.     That Defendant WOLF had a duty to fully inform a still grieving, just-widowed spouse that by signing a waiver, this encompasses the autopsy costs and the holding of the corpse.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 8

Defendant WOLF breached this duty because she did not fully inform Plaintiff VT of all material facts pertinent to signing the Waiver.

51.     That the amount of this claim is computed whereby the CA cap on each medical malpractice claim for general non-economic damages of $250,000 is venerated, but the total amount computed exceeds this because of the total number of causes of actions which are hereby mentioned.

52.     That the acts of medical malpractice on the Defendants who were directly involved in the late RGT's care leading to the physical pain and eventual death of the late RGT occurred during RGT's stay as a patient in Defendant VA-SF.

## V. <u>CAUSES OF ACTION</u>

### FIRST CAUSE OF ACTION

### <u>LACK OF INFORMED CONSENT</u>

53.     Defendant STETSON ("MD"), committed the tort of lack of informed consent on RGT and/or VT because he failed to disclose to RGT and/or VT the material risks and dangers inherently involved in turning off the heart defibrillator AICD which was death sooner or later after turning it off; the undisclosed material risk and danger actually materialized and were the proximate cause of the injury to RGT; and any ordinary reasonable person in the position of RGT and/or VT would have decided against turning off the heart defibrillator AICD, at that time, if known of the risk of death thereafter.

54.     As previously mentioned, the MD turned off the AICD of RGT.

55.     Firstly, there was a known material risk to turning off an AICD which is that the patient will more likely than not die because the AICD is the instrumentality which monitors the heart of the patient and the AICD shocks the heart if it needs to be.  A person dying is an obvious material risk.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 9

56.     Secondly, MD did not disclose to spouse VT in their phone conversation that if MD turns off the AICD that afternoon, that it is more likely than not that if there was an abnormality in RGT's heart rhythm, that the AICD will not be there anymore to make the heart continue beating normally like before, which sustained RGT's life, and that will lead to RGT's ultimate clinical death (defined as cessation of cardiac function).  RGT's possible death, which was either inherent or even potential, was not disclosed.

57.     Thirdly, spouse VT or any ordinary reasonable prudent person would have wanted to know this material risk and would have said no to stopping the AICD that afternoon, if told of the material risk.  VT, amongst all people, would have wanted to be at her spouse's side if she knew that turning the AICD off would possibly make RGT's death faster because there was no more monitoring of RGT's heart function.  VT had always been adamantly fighting to sustain RGT's life.  Even RGT himself wrote in his June letter to resuscitate him and further his life. (See Exhibit D – RGT's July 8, 2021 letter.)  Also, any ordinary normal person would have wanted to know of the material risk of hurrying up the death of his or her relative if an AICD was stopped.

58.     Fourthly, the material risk happened, being the death of RGT.  A few hours after MD stopped the AICD, RGT died.  However, MD could argue that it was all coincidental because RGT was suffering from multiple diagnoses.  The coroner's report stated that cause of death was hypoxia secondary to frequent aspirations.  Hypoxia is decreased oxygen in the blood.  Frequent aspirations are repeatedly chocking on his own saliva.  If this was the cause of death, then having an AICD to monitor the heart to keep on pumping oxygen would have at least, more likely than not, extended RGT's life more.  It is important to note that RGT had frequent aspirations for some time prior to his death and did not die from these then.  Here, after pulling out the AICD, he died several hours, more likely than not, because of the pulling out of the AICD.

59.     Thus, Defendant MD committed the tort of lack of informed consent on RGT and/or his surviving spouse and personal representative VT.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 10

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

SECOND CAUSE OF ACTION

**NEGLIGENCE ASSOCIATED WITH THE TORT OF LACK OF INFORMED CONSENT**

60.   RGT and/or responsible party VT were not informed of a material fact when turning off the defibrillator that afternoon, specifically that turning off would more likely than not hasten the death of RGT.

61.   Firstly, STETSON and/or STETSON'S agent had a duty to practice informed consent regarding turning off RGT's defibrillator.

62.   Secondly, STETSON and/or STETSON'S agent breached that duty because he did not practice informed consent when he turned off RGT's defibrillator.

63.   Thirdly, STETSON and/or STETSON'S agent's negligent conduct was the actual cause of hastening RGT's death because RGT and/or spouse VT would have thought about the material risk involved by turning off the defibrillator.  But for the STETSON and/or STETSON'S agent's negligent conduct, RGT and/or VT would have thought about the material risks involved in turning off the defibrillator.

64.   Fourthly, the STETSON and/or STETSON'S agent's negligent conduct was the proximate cause of the RGT and/or VT not thoroughly understanding the immediate consequences of turning off the defibrillator.  It was foreseeable that if a patient RGT and/or spouse VT were not informed that turning off the defibrillator would bring about a quicker death, then RGT would not have died a few hours after it was turned off.

65.   Fifthly, damage to RGT was that he died a few hours after turning the defibrillator off.

52.   Thus, STETSON and/or STETSON'S agent is/are liable for negligence associated with not practicing informed consent which hastened RGT's death.

THIRD CAUSE OF ACTION

**CIVIL HOMICIDE**

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 11

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

66.     Defendant MD is liable for murder because the death of RGT was a result of killing with malice aforethought, either with express malice or implied malice.

67.     Here, RGT was in the care of VA-SF, specifically under MD.

68.     Firstly, there was an unlawful killing because RGT was killed while he was a patient, without consent by RGT himself nor his wife VT.  It was under RGT's specific direction that all measures should be done to extend his life, except to use of cardiac compressions because of the existence of his defibrillator AICD.  RGT did not want to tamper with its proper functioning.

69.     Secondly, it was evident that there was malice aforethought, which could be express or implied.

70.     This could be "express" malice because when MD turned off the defibrillator AICD, he knew that turning this off would hasten RGT's death.  RGT had been on defibrillator for years and had depended on this to keep his heart functioning properly to sustain his life.

71.     This could also be "implied" malice because the homicide showed an abandoned and malignant heart.  Per the court, an abandoned and malignant heart killing results from an intentional act - the turning off of the defibrillator, and this intentional act's consequences are dangerous to life itself - the death of the patient.  Either express or implied malice, the MD had the malice aforethought requirement for murder.

72.     Thus, MD is liable for murder because the death of RGT was a result of killing with malice aforethought, either with express malice or implied malice.

FOURTH CAUSE OF ACTION

**NEGLIGENCE ASSOCIATED WITH CIVIL HOMICIDE**

73.     Firstly, there was a duty by STETSON and/or STETSON's agent to not turn off the defibrillator because turning off a defibrillator would result in hastening a patient's death, here done recklessly or negligently.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 12

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

74.     Secondly, STETSON and/or STETSON'S agent breached that duty because he turned off the defibrillator, done recklessly or negligently.

75.     Thirdly, STETSON and/or STETSON'S agent's negligent conduct was the actual cause of hastening RGT's death.  But for STETSON's negligence, then RGT would have still lived longer.

76.     Fourthly, the STETSON and/or STETSON'S agent's negligent conduct was the proximate cause of hastening RGT's death.  It was foreseeable that if a defibrillator is turned off, the patient's death is accelerated.

77.     Fifthly, damage to RGT was that he died a few hours after turning the defibrillator off.

78.     Thus, STETSON and/or STETSON'S agent is/are liable for negligence associated with unlawful homicide.

FIFTH CAUSE OF ACTION

**FRAUD OR DECEIT**

79.     Defendant VA-SF employee Judith Wolf ("WOLF") committed fraud or deceit because she misrepresented a material fact, knowing that this material fact is false, intended to induce reliance by VT on this fact, VT justifiably relied on this misrepresentation, and resulted to damages.

80.     Upon the demise of RGT, VT and her son Kenneth James, an Air Force employee, visited the VA Office of Decedent and both of them talked to WOLF.

81.     Firstly, VT was told that she needed to sign a waiver to get an autopsy and to get the decedent RGT's body.  WOLF told VT That if VT did not sign the waiver, then outside services would charge VT around $37,000.  VT did not have $37,000 so she signed a waiver.  This was a misrepresentation because this was an assertion not in accord with the facts as WOLF adamantly refused to give RGT's body back to VT claiming that VT already "signed a waiver."

82.     Secondly, WOLF had knowledge of what she actually told VT.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 13

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

83.    Thirdly, what WOLF told VT induced reliance in VT that she did not have to pay the $37,000 for the autopsy but still would be able to keep her spouse's dead body.

84.    Fourthly, VT justifiably relied on WOLF's assertion because there was no reason for VT to believe that WOLF would tell her otherwise.   WOLF is an employee of the VA office, and should be knowledgeable enough, and compassionate enough to deal with a still grieving close relative of a recently deceased veteran.   Also, VT would not have given up her recently deceased spouse's body because all these times VT was fighting for his life.

85.    Fifthly, damage to VT resulted because she was so distraught and distressed not just of the death of RGT, but also because of not seeing his body for proper funeral and burial services.

86.    Thus, VA-SF employee Judith Wolf committed fraud or deceit.


SIXTH CAUSE OF ACTION

**NEGLIGENCE ASSOCIATED WITH NON-DISCLOSURE TO SPOUSE VT OF SIGNING WAIVER REGARDING CORPSE OF RGT**

87.    Non-disclosure of all information and consequences of signing a waiver regarding RGT's corpse is also pursued under negligence by WOLF.

88.    Firstly, there was a duty by WOLF to inform spouse VT about the waiver and all the consequences which a waiver entailed.

89.    Secondly, WOLF breached that duty because she did not inform VT about facts and consequences of a waiver.

90.    Thirdly, WOLF's negligent conduct was the actual cause of VT's mistake about the waiver and the consequences of signing a waiver.   But for WOLF's negligence, then spouse VT would not have signed a waiver.

91.    Fourthly, the WOLF's negligent conduct was the proximate cause of VT's mistake about the waiver and the consequences of signing a waiver.  It was foreseeable that if WOLF did not fully disclose the act of a waiver and its consequences, then VT would sign the waiver.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 14

92.     Fifthly, damages done was to RGT with his corpse not being released right away to his spouse VT, and damages to VT was that she was not able to see her dead spouse's body within a reasonable amount of time.

93.     Thus, WOLF is/are liable for negligence associated with non-disclosure of the act and consequences of signing a waiver.

SEVENTH CAUSE OF ACTION

**DETENTION OF CORPSE OR HUMAN REMAINS IN VIOLATION OF CA Health & Safety Code § 7053**

94.     Defendant WOLF committed detention of corpse or human remains, in violation of CA Health & Safety Code § 7053 which states as follows:

> Every person who arrests, attaches, detains, or claims to detain any human remains for any debt or demand, or upon any pretended lien or charge, or fails to release any human remains, the personal effects, or any certificate or permit required under Division 102 (commencing with Section 102100) that is in his or her possession or control forthwith upon the delivery of authorization for the release signed by the next of kin or by any person entitled to the custody of the remains, is guilty of a misdemeanor.  (CA Health & Safety Code § 7053 (2020)

95.     A few days after the autopsy was completed, VT tried to reclaim RGT's body, but Wolf said that she cannot have the body because she signed the waiver that waived her right to claim the body.  RGT's body was detained by Wolf.  RGT's body was in Wolf's possession and control.

96.     Defendant WOLF asserted that since VT signed the waiver, VT intentionally relinquished her right to the dead body.  VT did not have full knowledge of this because she signed the waiver with the knowledge that she will be relieved to pay of the $37,000 which was being asked of her,

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

but not of intentionally relinquishing her right to get her dead spouse's body back after the autopsy.  In VT's situation, this period of time that she was deprived of the body was deplorable and disturbing because she thought that she could no longer have proper funeral and burial services for RGT.

97.     Plaintiff VT was only able to have the late RGT's body after more than two (2) weeks from the signing of the waver(?).

98.     Thus, VA-SF employee Wolf committed detention of corpse or human remains, in violation of CA Health & Safety Code § 7053.

EIGHTH CAUSE OF ACTION

**NEGLIGENCE BECAUSE OF MORE OPEN AREAS ALL OVER THE PLAINTIFF'S BODY**

99.     RGT was in VA-SF from August 19, 2021 to October 6, 2021.  This was seven (7) weeks under the VA-SF care.

100.    Upon admission, RGT had nine (9) open areas all over his body.  (Exhibit A.)  During this admission, RGT developed an additional twelve (12) areas, including skin breakdown on his penis.  (Exhibit A.)

101.    Firstly, the staff directly involved in his care, including Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN, for the late RGT, Defendant LYNN FLINT, STAFF PHYSICIAN, GERIATRICS, for the late RGT, and Defendant MARCO GOMEZ, NURSE, for the late RGT, (collectively "the staff") have a duty to prevent more ulcers in RGT's body.  It was known upon admission that RGT was already at risk of having decubitus, thus, the staff was on notice of this condition.

102.    Secondly, the staff breached its duty to RGT because more open areas developed.  Maybe one or two more would be explainable, but an additional twelve (12) open areas overall were way too many.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 16

103.    Thirdly, the staff's negligent conduct was the actual cause of the development of RGT's additional ulcers.  But for the staff's negligent conduct, the additional ulcers would not have developed.

104.    Fourthly, the staff's negligent conduct was the proximate cause of the additional ulcers. It was foreseeable that if the staff neglects to adequately care for RGT's increased risk of developing the open areas, then more ulcers will develop.

105.    Fifthly, damage to RGT was that he had more open areas.

106.    Thus, the staff is liable for negligence which brought about more open areas on RGT.

NINTH CAUSE OF ACTION

**NEGLIGENCE BECAUSE OF MORE PAIN ON PLAINTIFF, CAUSED BY THE ADDITIONAL OPEN AREAS ALL OVER THE PLAINTIFF'S BODY**

107.    In RGT's situation, pain management from the additional open areas was not effective.  It was documented in the medical chart that RGT "appears to be in a lot of pain from open areas. Winces with most movement and manipulation."  (EXHIBIT C, 1st sentence).

108.    Firstly, the staff directly involved in his care including Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN, for the late RGT, Defendant LYNN FLINT, STAFF PHYSICIAN, GERIATRICS, for the late RGT, and Defendant MARCO GOMEZ, NURSE, for the late RGT, (collectively "the staff"), had a duty to ensure that RGT received adequate pain management.  RGT's ulcers multiplied, thus, more pain management routine should have been given.

109.    Secondly, the staff breached its duty to RGT because even though the ulcers were present, and even became more, it was documented that he still was in a lot of pain.  It was even documented that RGT was even deprived of any pain meds.  It was in the same medical chart (See Exhibit C, 2nd sentence) that ". . . Has not gotten any doses the last few days with increasing tachypnea, diaphoresis, and general discomfortable appearing nature."

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 17

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

110.    Thirdly, the staff's negligent conduct was the actual cause of RGT's pain.  But for the staff's negligent conduct, then RGT's pain would have been lessened, if not extinguished.

111.    Fourthly, the staff's negligent conduct was the proximate cause of RGT's pain.  It was foreseeable that if the staff neglects to give adequate and sufficient pain control for RGT, then RGT would be in more severe pain than what he started with.  It is important to note that he came in with way fewer open areas than what he developed in VA-SF.

112.    Fifthly, damages or harm to RGT was that he was in more pain.  The chart mentioning that RGT was wincing with most movement and manipulation was evidence that he was in pain.

113.    Thus, the staff is liable for negligence which brought about more severe and excruciating pain on RGT.


ELEVENTH CAUSE OF ACTION

**NEGLIGENCE BECAUSE OF NOT PROVIDING RANGE OF MOTION TO THE LATE RGT WHICH CONTRIBUTES TO STIFFNESS AND DISCOMFORT**

114.    RGT was in VA-SF from August 19, 2021 to October 6, 2021.  Again, this was seven (7) weeks under the VA-SF care.

115.    In all the documentation obtained by the Plaintiff VT, there was no mention that any of the Defendants provided range of motion exercises to the joints of the late RGT.

116.    Firstly, the staff directly involved in his care, including Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN, for the late RGT, Defendant LYNN FLINT, STAFF PHYSICIAN, GERIATRICS, for the late RGT, and Defendant MARCO GOMEZ, NURSE, for the late RGT, (collectively "the staff") had a duty to ensure or order another staff, that range of motion, often called "ROM exercises" were provided to patients who are unable to move their bodies actively.  Not providing ROM exercises lead to stiffness and discomfort.

117.    Secondly, the staff breached its duty to RGT because there were no ROM exercises provided.

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

118.     Thirdly, the staff's negligent conduct was the actual cause of more pain and discomfort because the joints are stiff.  But for the staff's negligent conduct, the joints of the late RGT would have been more mobile, decreasing stiffness and discomfort.

119.     Fourthly, the staff's negligent conduct was the proximate cause of the additional stiffness and discomfort.  It was foreseeable that if the staff neglects to provide ROM exercises, then this was a source of stiffness and discomfort.

120.     Fifthly, damage to RGT was that he had more stiffness and discomfort, and would definitely be wincing upon movement.

121.     Thus, the staff is liable for negligence because no ROM exercises were provided to the late RGT, increasing stiffness and discomfort.

## TWELFTH CAUSE OF ACTION

## NEGLIGENCE OF VA-SF BECAUSE VA-SF BREACHED ITS DUTY TOWARDS THE LATE RGT, WHICH CAUSED RGT TO HAVE MORE OPEN AREAS ON RGT'S BODY

122.     VA-SF is liable for negligence because VA-SF owes its patients the duty of protection, and VA-SF did not exercise reasonable care towards RGT, which brought about more open areas, in addition to the continued existence of the initial ones.

123.     RGT was in VA-SF from August 19, 2021 to October 6, 2021.  This was seven (7) weeks under the VA-SF care.  Upon admission, RGT had stage 4 sacral decubitus ulcer and bilateral heel ulcers.  After being admitted to VA-SF, RGT developed a total of 12 open areas everywhere on his body, including skin breakdown on his penis.

124.     Firstly, VA-SF had a duty to ensure that RGT did not have more open areas than what he started out with.  Duty of care extends to all foreseeable plaintiffs, within the scope of risk of defendant's negligent conduct.  The standard of care for a hospital is reasonable care, with duty of protection.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 19

125.    Secondly, VA-SF breached its duty because RGT eventually ended up with additional 12 open areas on his body.

126.    Thirdly, VA-SF's negligent conduct is the actual cause of the continued existence of the original nine (9) open areas, and the additional twelve (12) open areas.  But for the negligence of VA-SF, the continued existence of the open areas and/or the addition of more ulcers would have been limited, if not curtailed.  If VA-SF had steps in place to ensure that if a patient was admitted with open areas, then special monitoring of such shall be exercised.  It should have been able to prevent more open areas through education of its staff.  It should have been able to eliminate, decrease the size, or at least keep the status quo of the open areas.  If there was no special monitoring procedure or special processes addressing open areas, then this was the omission. But for the existence of this monitoring, RGT's open areas would have been addressed sufficiently.

127.    Fourthly, VA-SF's conduct is the proximate cause of the continued existence of, and addition of more open areas.  It was foreseeable that if VA-SF was not negligent, be it in conduct or in its omission, then this would not have happened.

128.    Fifthly, damages or harm to RGT was his continued suffering, with existing initial open areas, and more suffering with the addition of more open areas.

129.    Thus, the VA-SF is liable for negligence because of RGT's open areas, continued existence of the nine (9) initial ones on admission, and the addition of twelve (12) more during this period of admission.

THIRTEENTH CAUSE OF ACTION

**NEGLIGENCE OF VA-SF BECAUSE VA-SF BREACHED ITS DUTY TOWARDS THE LATE RGT, WHICH BROUGHT ABOUT ADDITIONAL SEVERE AND EXCRUCIATING PAIN DIRECTLY AS A RESULT OF RGT'S OPEN AREAS**

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

130.   In RGT's situation, pain management from the additional open areas was not effective.  It was documented that RGT "appears to be in a lot of pain from open areas.  Winces with most movement and manipulation."  (EXHIBIT A) (Page 176 of 3034).

131.   Firstly, VA-SF has a duty as a hospital to all its patients.  As mentioned, this is duty of protection/reasonable care.  Duty to protect RGT from more injury than what he started out with, with concomitant duty to protect RGT from more pain than what he started out with.

132.   Secondly, VA-SF breached its duty to RGT because RGT developed more open areas with its concomitant increased pain.  Any skin lesion generally involves pain.  More skin lesions then logically entail more pain.  Here, RGT was admitted with pain meds, but this should have been reviewed more often, modified if it could have modified, communicated with the entire health team on how to decrease if not eliminate RGT's pain.   "The measure of duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in that community, and required by the express or implied contract of the undertaking."  *Rice v. California Lutheran Hospital*, (1945) 27 Cal. 2d 296, 299.  Having employees does not take liability out from the hospital's duty and breach thereof.

133.   Thirdly, VA-SF's negligent conduct is the actual cause of RGT's more pain because RGT was still in pain until the end of his life.  But for VA-SF's conduct, in its act or omission, RGT would have been less in pain, if not in no pain.  If VA-SF had steps in place to ensure that if a patient was admitted with pain and then more sources of pain developed (open areas), then special monitoring of such shall be exercised.  It should have been able to prevent more pain and sources of more pain through education of its staff.  It should have been able to eliminate the pain, decrease the pain, or at least keep the status quo of the pain and prevent to add more sources of pain.  If there was no special monitoring procedure or special processes addressing pain and how to prevent adding more pain to a patient, then this was the omission.  But for the existence of this monitoring, RGT's pain and sources of more pain would have been addressed sufficiently.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 21

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

134.    Fourthly, VA-SF's negligence is the proximate cause of RGT's continued pain because it is foreseeable that if VA-SF breached its duty to protect RGT, specifically duty to address pain and prevent from adding more pain, then RGT would be in agony.

135.    Fifthly, damage or injury to RGT was him having more pain than what he started out with.  Damage to VT was seeing all these and suffered from extreme distraught/distress while RGT was in VA-SF's care.

136.    Thus, the VA-SF is liable for negligence because of RGT's additional more severe and excruciating pain directly a result of his open areas.

FOURTEENTH CAUSE OF ACTION

**VA-SF VICARIOUSLY LIABLE**

137.    VA-SF is vicariously liable as an employer for all the aforementioned causes of actions.

138.    It is well-established that in *respondeat superior*, an employer is vicariously liable for the torts of its employees committed within the scope of the employment.

139.    Here, VA-SF is the employer of the employees named in all of the aforementioned causes of actions.  The employees committed the improper wrongful conduct while they were in the hospital premises, during employment, and within the scope of employment.  An employer is vicariously liable for the torts of its employees.

Thus, VA-SF is vicariously liable as an employer for all the aforementioned causes of actions.

FIFTEENTH CAUSE OF ACTION

**VIOLATION OF THE CA ELDER ABUSE LAW (EADACPA) FOR ALL VA-SF DEFENDANTS STAFF AND VA-SF ITSELF AS AN INSTITUTION**

140.    VA-SF staff,  including Defendant GEOFFREY STETSON, ATTENDING PHYSICIAN, for The late RGT, Defendant LYNN FLINT, STAFF PHYSICIAN,

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 22

GERIATRICS, for The late RGT, and Defendant MARCO GOMEZ, NURSE, for the late RGT, (collectively "the staff"), and the VA-SF itself as an entity are both liable for violation of the Elder Abuse and Dependent Adult Civil Protection Act  (EADACPA), commonly called the CA Elder Abuse Law  (Welfare & Inst. Code ' 15600, et seq.), because of the neglect of an elderly person and/or the deprivation by both of services that are necessary to avoid physical harm or mental suffering.

141.    Additionally, CACI 3103 specifically provides for a cause of action against a health care provider for custodial neglect without regard to the type of facility, which includes a general acute care hospital such as Defendant VA-SF.  See Exhibit I (CACI 3103).

142.    Firstly, in RGT's situation, there was negligence on the part of VA-SF staff, VA-SF itself, and vicarious liability of VA-SF.  These were discussed above individually.

143.    Secondly, there was deprivation by the VA-SF staff and VA-SF itself of goods or services that are necessary to avoid physical harm or mental suffering.  In the cause of actions against the aforementioned, RGT and spouse VT are both asserting that the aforementioned should have done something to alleviate RGT's plight.  However, instead of alleviating RGT's plight, their wrongful conduct or negligent conduct were even the actual and/or proximate cause of his downfall and eventual death.  For RGT, this included:  no informed consent from patient RGT and/or spouse VT to turn defibrillator off; negligent care of the VA-SF staff which made RGT's open areas multiply; negligent care of the VA-SF staff which made RGT's pain continue and even made worse.  For spouse VT, this included:  no informed consent from spouse VT to turn off respirator; intentionally misrepresented the waiver; detaining the corpse of the late RGT for a period of time.

144.    Furthermore, aside from the wrongful or improper or negligent conduct, omissions from the defendants were numerous.  For all of the causes of action, processes to ensure that patients like RGT would not just have their defibrillators turned off without obtaining proper consent from the wife to ensure that the spouses can say their goodbyes in their own terms, telling the

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 23

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

surviving spouse that she cannot have the dead spouse's body after autopsy, having multiple open areas in the body on an already debilitated thin frail elderly, and increasing the pain because RGT developed more sores during this hospital stay, should have been in place. The defendants just did not do enough to maintain and keep what RGT had before going to VA-SF. If maintained, at best, then RGT would not have suffered more sores, had more pain from these, and possibly still alive. Prior to being admitted to VA-SF, he did not have these.

145.    Thus, the VA-SF staff and the VA-SF itself as an institution are both liable for violation of the CA Elder Abuse Law (EADACPA) because of the neglect of an elderly person and/or the deprivation by both of services that are necessary to avoid physical harm or mental suffering.


SIXTEENTH CAUSE OF ACTION

**WRONGFUL DEATH**

146.    Surviving spouse Plaintiff VT is asserting a claim for wrongful death because there was a tort, resulting to death, and damages to VT were incurred.

147.    Here, Plaintiff VT will be able to establish (a) informed consent failure; (b) civil murder; (c) negligence by VA-SF itself as an entity; (d) vicarious liability of VA-SF; and (e) elder abuse. Additionally, there was a resulting death secondary to these causes of actions. Also, damages were incurred as a result of these which include economic and non-economic compensatory damages including pain and suffering, disfigurement, emotional distress, anxiety, and mental anguish.

148.    Only Plaintiff VT amongst the heirs is asserting this cause of action. Nominal Defendant Michelle R. Thompson-Cowgill, Nominal Defendant Katherine Thompson, and Nominal Defendant Dirk R. Thompson are not Plaintiffs in this suit.

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 24

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

### PRAYER

WHEREFORE, Plaintiffs pray for judgment against defendants and each of them as follows:

1. For nominal damages to vindicate the wrongs done to the late RGT and spouse VT.

2. For an award of the late RGT's general compensatory damages in the sum of $250,000 for each cause of action because he suffered non-economic damages which included: pain and suffering, emotional distress, anxiety, mental anguish, loss of consortium, inconvenience, loss of enjoyment of life, loss of opportunity, and disfigurement, totaling $3,000,000 for all twelve counts of causes of action.

3. For an award on Plaintiff VT's general compensatory damages in the sum of $250,000 for each cause of action because she suffered non-economic damages which included: pain and suffering, emotional distress, anxiety, and mental anguish, and inconvenience totaling $750,000 for all 3 counts of causes of action.

4. For an award of Plaintiff VT's wrongful death cause of action in the sum of $250,000 for each cause of action because she suffered non-economic damages which included: pain and suffering, emotional distress, anxiety, mental anguish, loss of consortium, inconvenience, loss of enjoyment of life, and loss of opportunity for each cause of action, totaling $250,000 for 1 count of cause of action.

5. For punitive damages because of the multiplicity of the causes of action showing willful, wanton, and malicious conduct of the Defendant/s against an elderly couple, up to nine times of the total final award, whichever amount this honorable Court deems fit;

6. For interest accrued to date;

7. For cost of suit and expenses incurred;

8. For all such other and further relief that the Court may deem just and proper.

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c

1

2

DATED:      August 17, 2022

3

_Richard Taguinod_

4
_____
Richard Aguila Taguinod
Attorney for Plaintiff Russell Gene
Thompson, and Victoria Thompson

5

6

7

_E. Quiambao_

8
_____
Eloisa Songco Quiambao
Attorney for Plaintiff Russell Gene
Thompson, and Victoria Thompson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR LACK OF INFORMED CONSENT, CIVIL HOMICIDE, NEGLIGENCE CAUSING OPEN AREAS, NEGLIGENCE CAUSING MORE PAIN, NEGLIGENCE OF VA-SF, VICARIOUS LIABILITY OF VA-SF, VIOLATION OF THE CA ELDER ABUSE ACT, SURVIVAL ACTION, AND WRONGFUL DEATH - 26

Doc ID: 191245c3ebcbaf80fd9156a61dcafc964b65a59c